FILED

2013 Mar-05  AM 11:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SOUTH-CENTRAL CONFERENCE** | ] | |
| **OF SEVENTH DAY ADVENTISTS, et** | ] | |
| **al.,** | ] | |
| | ] | |
| **Plaintiffs,** | ] | **2:12-cv-2451-KOB** |
| | ] | |
| **v.** | ] | |
| | ] | |
| **CITY OF ALABASTER,** | ] | |
| | ] | |
| **Defendant.** | | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the court on The Defendant City of Alabaster's "Motion to Dismiss First Amended Complaint." (Doc. 27).  The City argues that the court should dismiss this case because the Plaintiffs do not have standing to challenge the City's Business License Ordinance or Amended Solicitation Permit Ordinance. The court now addresses this preliminary matter and will DENY the City's motion to dismiss because the Plaintiffs do have standing to bring this constitutional challenge.

The facts of this case are disputed and lengthy but for purposes of this motion to dismiss, the court will only outline the pertinent incident that gave rise to this lawsuit. The City of Alabaster has enacted ordinances that require anyone doing business within the City to obtain a Business License and anyone going door-to-door selling products or soliciting donations to obtain a Solicitation License.

On the evening of June 27, 2012, City of Alabaster Police Officer Steve Hataway stopped Stephen Douglas, a Seventh Day Adventist "Literature Evangelist" who was canvassing door to

1

door at 1032 Arrowhead Trail. The City contends that Mr. Douglas stated he worked for Family Education Services as part of a scholarship program, and the parties agree that at some point in the conversation Mr. Douglas told Officer Hataway that he was a spiritual evangelist. The central dispute in this case revolves around whether Mr. Douglas and other Literature Evangelists were selling books door to door or ministering and proselytizing but that issue is irrelevant for purposes of determining whether the plaintiffs have standing.

Officer Hataway criminally charged Mr. Douglas with "selling books door to door without a City of Alabaster permit" in violation of ordinance § 78-33. (Doc. 3-1, at 26).  The Police Officers told Nathanael DeCanal, Mr. Douglas' team leader, that the Literature Evanglesists could not sell books door to door without a permit and that if they were found going door to door again without a business license or permit, they could go to jail.  The Plaintiffs claim that as a result of the Officers', and thus the City's, actions the Literature Evangelists suspended their activities within the City.

Since the June 2012 incident, the City of Alabaster has amended its Solicitation Ordinance, but if the Plaintiffs re-commenced their door-to-door canvassing in the summer of 2013 without applying for a license and permit, as they have made definite plans to do, then their actions would still violate the Amended Ordinance. Because the Plaintiffs plan to return to Alabaster and the City plans to enforce its amended ordinance, a repetition of the June 2012 incident is imminent.

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991).   The court, in addressing the

2

issue of federal jurisdiction, must also consider a plaintiff's standing to assert a cause of action, "because standing is an element of the constitutional requirement of 'case or controversy,' [and] lack of standing deprives the court of subject matter jurisdiction." *In re Weaver*, 632 F.2d 461, 463 n.6 (11th Cir. 1980) (citing *Fairley v. Patterson*, 493 F.2d 598 (5th Cir. 1974)).

The Plaintiffs bear the ultimate burden of establishing standing, and to do that they must show: "'(1) the plaintiff ... suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Bloedorn v. Grube,* 631 F.3d 1218, 1228 (11th Cir. 2011) (quoting *Fla. Family Counsel v. Freeman,* 561 F.3d 1246, 1253 (11th Cir. 2009)).

In *Bloedorn*, the plaintiff was an itinerant preacher who traveled to college campuses to broadcast his evangelical message. Mr Bloedorn went to Georgia Southern University in March 2008 and happened to pick a grassy knoll from which to preach in the middle of campus that was actually GSU's designated Free Speech Area. Soon after Mr. Bloedorn began preaching, a GSU official approached him and informed him that before he could use the Free Speech Area he needed to seek and obtain a permit from GSU. GSU's Speech Policy required non-campus speakers to request a permit to use the Free Speech Area; the permit request form for outside, non-GSU sponsored speakers required the applicant to provide basic information to be approved. Mr. Bloedorn refused to comply with GSU's Speech Policy and kept preaching until eventually

3

he was arrested for trespass. *Bloedorn*, 631 F.3d at 1225-28. Mr. Bloedorn filed a civil rights action in district court claiming that GSU's Speech Policy deprived him of his rights to free speech and due process and that he was unable to return to the campus to speak because he was fearful of re-arrest. The defendants argued that Mr. Bloedorn did not have standing to challenge the Speech Policy.

The Eleventh Circuit determined that Mr. Bloedorn did have standing to sue for a preliminary injunction because he "did suffer an injury in fact that is both concrete and imminent with respect to his ability to speak throughout the GSU campus." *Bloedorn*, 631 F.3d at 1228. The court stated that, "In determining whether an injury is imminent, the law requires only that the anticipated injury occur within some fixed period of time in the future. Immediacy, in this context, means reasonably fixed and specific in time and not too far off." *Id.* (internal quotations omitted). Bloedorn "had averred that he intend[ed] to return and proselytize on the GSU campus, but he ha[d] not done so because of fear of his re-arrest. On this record, there is every indication that GSU would re-arrest Bloedorn if he returned to campus to speak in the Free Speech Area without a permit or, for that matter, to speak anywhere else on campus." The Court held Mr. Bloedorn had established an injury in fact that was "actual, concrete, and particularized." *Id.* at 1229.

This case seems almost indistinguishable from *Bloedorn* and its principles should apply in this case. Mr. Bloedorn never applied for a permit to speak at GSU and was arrested for not having a permit, but the Court granted him standing to challenge the permit policy. Similarly, the Plaintiffs in this case did not apply for a business license or a solicitation permit and Mr. Douglas was subsequently cited for soliciting door to door without a permit. In this case, however, the

4

City has repealed the Ordinance under which Mr. Douglas was cited, but the Amended Ordinance would still require the Plaintiffs to get a permit for their door-to-door activities. The practical effect of the Amended Ordinance is the same as the now-repealed ordinance. The Plaintiffs have made concrete plans to return to Alabaster in the summer of 2013, and the City has attested to the fact that it intends to enforce the Amended Ordinance.

Because the Plaintiffs seek equitable relief, they must show that the threat of future harm is "real and immediate" rather than "conjectural or hypothetical" under *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 105-6 (1983). As discussed above, it is apparent in this case that both sides of the controversy have made "reasonably fixed" plans and will most likely take action, making likely a recurrence of the events giving rise to Mr. Douglas' citation and the subsequent filing for a temporary restraining order that occurred in the summer of 2012. *See Bloedorn*, 631 F.3d at 1228. Even though the Plaintiffs never applied for a permit under the former or Amended Ordinances, they still suffered an injury in fact and face real and immediate threat of future harm "not too far off:" this summer when they begin canvassing in Alabaster. *See id.*

Having determined that the Plaintiffs have suffered an injury in fact and face an immediate threat of future harm in the same form if they recommence their activities in Alabaster this summer, the court turns to the final two elements necessary to have constitutional standing: causation and redressability. An obvious causal connection exists: if not for the Ordinances and actions of the City of Alabaster in enforcing its ordinance, the Plaintiffs would be able to engage in their door-to-door canvassing without fear of fine or arrest. Similarly, there can be little doubt that the complained of injures can be redressed by a favorable decision by this court. Thus, the Plaintiffs have sufficiently established they have standing to challenge the City's Ordinances, and

this court has jurisdiction to hear the Plaintiffs' claims.

For these reasons, the court DENIES the City's motion to dismiss and will hear argument on the parties' remaining claims contained in their cross motions for summary judgment at the hearing scheduled on March 21, 2013.

DONE and ORDERED this 5th day of March, 2013.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE